## James Moore v. The State.

.No. 7791.   Decided June 20, 1923.

**1.—Theft of Hog—Evidence—Expert Opinion.**

Where the witness testified that he had been dealing with hogs for more than twenty years, etc., there was no impropriety in permitting him to testify relative to the matter of the appearance of the animal.

**2.—Same—Circumstantial Evidence—Rule Stated.**

This being a case depending for conviction upon circumstantial evidence, the State had a right to explore every legitimate channel and introduce all testimony which throws any light upon circumstances surrounding the transaction, and there was no error in admitting testimony as to the conversation between witnesses and defendant in connection with the alleged theft.

**3.—Same—Evidence—Rebuttal—Other Transactions.**

If it was true that the sow had been raised by defendant and was the mother of the alleged stolen hog, it would destroy the State's case, and the State had a right to introduce any legitimate evidence tending to overturn it, even though an extraneous crime or other transaction is a part of the res gestae.

**4.—Same—Cross-Examination—Other Transaction.**

Where, upon cross-examination of defendant, the State inquired of him as to certain hogs sold by him to one Hurston in the spring of the year before the alleged theft, and under the facts of the instant case there is no reversible error.

**5.—Same—Sufficiency of the Evidence.**

Where, upon trial of theft of a hog, the evidence was sufficient to sustain the conviction, there is no reversible error.

Appeal from the District Court of Falls.   Tried below before the Honorable Prentice Oltorf.

Appeal from a conviction of theft of a hog; penalty, two. years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*R. G. Storey*, Assistant Attorney General, for the State.

HAWKINS, Judge.—Conviction is for theft of a hog.   Punishment, two years in the penitentiary.

The hog in question is shown to have belonged to J. C. Llewelyn. About August 20th he had eight hogs which he left in the care of his son-in-law, J. K. Campbell.   On this date Llewelyn left for a trip in

west Texas and did not return until August 30th. During his absence the hogs got out of the lot and only two of them were found by Campbell. Upon Llewelyn's return he instituted a search for the others. He found four of them on or near the Watson farm; the one in question he found in the possession of J. E. Crook, and one was never found. On the day before Llewelyn discovered his hog in Crook's possession appellant claimed to be looking for two hogs which he said he had lost. In a conversation with the witness of whom he made inquiry appellant said the mother of the hogs was in his (appellant's) pen. Early on the morning of the next day appellant appeared at the house of one McKay and asked permission to pen the hog in question in his lot; he claimed to have lost it out of a wagon while moving it the night before; he later appeared with Mr. Webb who hauled the hog for him and delivered it to Crook.

Appellant claims to have raised the hog which he sold to Crook. He testified that while moving it and another one from near Moody to the place where he then lived near the Watson farm, this particular hog had escaped from the wagon. Upon the trial he denied that he claimed he had lost two hogs; however it was shown by more than one witness for the state that he did make such claim. It is not necessary to set out the evidence in detail but we deem it sufficient to sustain the conviction.

One mark by which Mr. Llewelyn identified the hog in question was that its snout had been smoothly cut off with a knife. Appellant claimed that the snout of his hog was disfigured but that worms had gotten into it and that the loss of the snout was caused by them. Complaint is urged in one bill of exception to the testimony of Mr. Crook as to the appearance of the snout of the hog purchased by him from appellant. He testified that he had been dealing with hogs for more than twenty years; had observed the difference in appearance resulting from cutting their snout with a knife and that left by worms; that the appearance of the snout of the hog in question indicated that it had not been eaten by worms but had been smoothly cut with a knife. We have been unable to discover any impropriety in this testimony in view of Mr. Crook's long experience relative to the matter testified about.

Several complaints are presented in various bills of exception to evidence of conversations had by the witnesses Webb and Crook with appellant relative to other hogs claimed by him to have been owned by him at the time of the alleged theft. This being a case depending for conviction upon circumstantial evidence the state had a right to explore every legitimate channel and introduce all testimony which would throw any light upon circumstances surrounding the transaction. Many cases are collated by Mr. Branch under Section 1872 of his Ann. Penal Code supporting this proposition, and we think thereunder the evidence was not objectionable.

The day after appellant was arrested the witness Hibbler went to appellant's place and in his hog pen discovered a sow which he identified as belonging to him (Hibbler) which had been gone for more than a month. Under a claim of ownership Hibbler took this sow. Objection was urged to Hibbler's testimony to the foregoing facts, and also to any inquiry of appellant with reference to the sow in question. If we correctly analyze the testimony, appellant had told one witness while making inquiry for hogs he claimed to have lost, that the sow then in his lot was the mother of these ostensibly lost hogs. Appellant also claimed on the trial through his own testimony that he had hauled the sow in question and all other hogs then in his possession from Moody when he moved from that place to where he was living at the time of the alleged theft. By these facts introduced in evidence it was sought to leave the inference with the jury that the sow in appellant's lot had been raised by him and was the mother of the hogs for which he claimed to be hunting. If it was true that the sow had been raised by appellant and was the mother of the alleged stolen hog it would go to the question of identity and destroy the state's case, and the State had a right to introduce any legitimate evidence tending to overturn it, even though it might develop another criminal transaction against appellant. We therefore observe no impropriety in admitting the testimony of Hibbler nor in permitting the inquiry of appellant while testifying in his own behalf relative to the sow in question. Mr. Branch cites many authorities under Section 166 of his Ann. Pen. Code from which he deduces the following rule:

" When an extraneous crime or other transaction is a part of the res gestae, or tends to show intent when intent is an issue, or tends to connect defendant with the offense for which he is on trial, proof of same is admissible."

Upon cross-examination of appellant the state over objection inquired of him relative to certain hogs sold by him to one Hurston in the spring of the year before the alleged theft in the instant case. Appellant stated that he got the four hogs which he had sold to Mr. Hurston from his brother at Moody who was keeping some hogs for him at that time on the halves. We have not been able to discover the relevancy of the inquiry as to the hogs sold to Hurston several months prior to the instant transaction; but in view of appellant's explanation and the fact that the truth thereof nowhere appears to have been challenged by the state, we do not think same presents which would call for a reversal.

The court seems to have given a full and fair charge presenting all of appellant's defensive issues in a way which was satisfactory. Embraced therein was an instruction that if appellant took possession of the hog in question believing it belonged to him, or if the jury had a reasonable doubt upon that issue, they should acquit him.

Finding no error in the record which would authorize a reversal the judgment is affirmed.

*Affirmed.*